FILED
**United States Court of Appeals**
**Tenth Circuit**

**<u>PUBLISH</u>**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 4, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

---

LEACHCO, INC.,

    Plaintiff - Appellant,

v.

CONSUMER PRODUCT SAFETY
COMMISSION; ALEXANDER HOEHN-
SARIC, Chair of the Consumer Product
Safety Commission; DANA BAIOCCO,
Commissioner of the Consumer Product
Safety Commission; MARY T. BOYLE,
Commissioner of the Consumer Product
Safety Commission; PETER A.
FELDMAN, Commissioner of the
Consumer Product Safety Commission;
RICHARD TRUMKA, Commissioner of
the Consumer Product Safety Commission,

    Defendants - Appellees.

------------------------------

PUBLIC CITIZEN, INC.,

    Amicus Curiae.

No. 22-7060

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:22-CV-00232-RAW)**

---

Oliver J. Dunford, Pacific Legal Foundation, Palm Beach Gardens, Florida (Kurt M. Rupert, Hartzog Conger Cason, Oklahoma City, Oklahoma and John F. Kerkhoff and Frank D. Garrison, Pacific Legal Foundation, Arlington, Virginia with him on the briefs), for Plaintiff-Appellant Leachco, Inc.

Joshua M. Salzman, U.S Department of Justice, Washington, D.C. (Brian M. Boynton, Principal Deputy Assistant Attorney General and Daniel Aguilar, Washington, D.C. with him on the brief), for Defendants-Appellees.

Scott L. Nelson and Allison M. Zieve, Public Citizen Litigation Group, Washington, D.C., for amicus curiae Public Citizen.

———————————————————

Before **MATHESON**, **EBEL**, and **CARSON**, Circuit Judges.

———————————————————

**EBEL**, Circuit Judge.

———————————————————

Plaintiff-Appellant Leachco, Inc. appeals the district court's denial of its request for a preliminary injunction to enjoin administrative enforcement proceedings by the Consumer Product Safety Commission (CPSC) against it. Leachco argues that statutory removal protections for CPSC commissioners and administrative law judges (ALJs) violate Article II of the Constitution and the separation of powers. The district court denied Leachco's motion for a preliminary injunction on the ground that, even if Leachco's constitutional arguments were meritorious, the constitutional violations alleged by Leachco were insufficient to establish that it will suffer "irreparable harm . . . if the injunction is denied." Gen. Motors Corp. v. Urb. Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007).

We conclude that current Supreme Court and Tenth Circuit precedent establishes that Leachco's subjection to proceedings before an agency whose officials allegedly have

unconstitutional protection against removal is insufficient, by itself, to establish irreparable harm. Because Leachco's only preserved asserted harm is that it has to appear before an unconstitutionally composed agency, we look briefly at the prevailing law on that issue as well to judge whether Leachco has established that it will be harmed in that manner. Supreme Court and Tenth Circuit precedent casts doubt on Leachco's ability to prove that claimed harm. Therefore, Leachco has failed to satisfy the irreparable harm requirement necessary to obtain a preliminary injunction, both with respect to the CPSC commissioners and its administrative law judge. Given the current precedential support for the district court's decision, we cannot conclude that Leachco has established a "clear and unequivocal" "right to relief," as would be required for Leachco to prevail here. Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). Having jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(a)(1), we therefore AFFIRM the district court's denial of Leachco's motion for a preliminary injunction.

## I. BACKGROUND

### 1. The CPSC

The Consumer Product Safety Commission (CPSC) is a federal agency authorized to enforce the Consumer Product Safety Act, 15 U.S.C. § 2051 et seq. Congress gave the CPSC a variety of tools with which to regulate the safety of consumer products, including the power to ban certain products, and the power to order various remedies (including recalls) when it has determined that a product poses a substantial hazard. Id. § 2057, 2064. In doing so, the CPSC holds formal

adjudicatory hearings under the Administrative Procedure Act (APA), 5 U.S.C.

§ 554.  15 U.S.C. § 2064(f)(1).  The presiding officer at the hearing is ordinarily an

administrative law judge (ALJ).  See 5 U.S.C. § 556(b) (specifying that presiding

officers may either be (1) the agency, (2) a member of the body that comprises the

agency, i.e., a commissioner, or (3) an ALJ); 16 C.F.R. § 1025.3(i) (CPSC regulation

defining "presiding officer" to include ALJs, but not commissioners).  The presiding

officer in the CPSC's proceedings against Leachco is Michael G. Young, an ALJ

with the Federal Mine Safety and Health Review Commission who is on loan to the

CPSC.  See 5 C.F.R. § 930.208.  As an ALJ, Young may only be removed by the

CPSC "for good cause established and determined by the Merit Systems Protection

Board on the record after opportunity for hearing before the Board."  5 U.S.C.

§ 7521(a).

    The CPSC has extensive investigatory powers, including the power to inspect

facilities, to compel the production of documents and testimony, and to hold a wide

range of hearings.  15 U.S.C. § 2076(a), (b).  The CPSC may also initiate civil and

criminal actions in certain cases.  Id. § 2076(b)(7).

    The CPSC is led by five commissioners, who are appointed by the President

and confirmed by the Senate.  Id. § 2053(a).  The organic statute directs the President

to consider for nomination "individuals who, by reason of their background and

expertise in areas related to consumer products and protection of the public from

risks to safety, are qualified to serve as members of the Commission."  Id. § 2053(a).

Commissioners serve staggered seven-year terms.  Id. § 2053(b)(1).  No more than

three commissioners may be from the same political party.  <u>Id.</u> § 2053(c).  And, important to this case, "[a]ny member of the Commission may be removed by the President <u>for neglect of duty or malfeasance in office but for no other cause</u>."  <u>Id.</u> § 2053(a) (emphasis added).

## 2. The CPSC's Proceedings Against Leachco

Plaintiff-Appellant Leachco, Inc. is an Oklahoma corporation which manufactures and markets various products.  One of its products is an infant lounger, the "Podster," which has been involved in two incidents that resulted in an infant's death.  The CPSC authorized the issuance of an administrative complaint against Leachco on February 9, 2022, alleging the Podster presents a "substantial product hazard" under 15 U.S.C. § 2064.

## 3. The District Court's Decision

After the CPSC initiated an administrative proceeding against it, Leachco filed a verified complaint for injunctive and declaratory relief against the CPSC and its commissioners in the United States District Court for the Eastern District of Oklahoma.  Leachco asserted six constitutional claims, two of which are relevant to this interlocutory appeal—that the removal protections (1) for CPSC commissioners and (2) for ALJ Young, the presiding officer in Leachco's proceedings, violate the separation of powers and Article II of the Constitution.

Leachco moved for a preliminary injunction under Federal Rule of Civil Procedure 65(a) to prevent the CPSC from continuing its administrative proceeding against Leachco during the course of this litigation.  The district court denied the

preliminary injunction on the ground that Leachco "failed to show it is likely to suffer irreparable harm in the absence of a preliminary injunction."  The district court rejected both theories of irreparable harm advanced by Leachco: (1) the purported "here-and-now" constitutional injury of being subjected to proceedings before an unconstitutionally structured agency, and (2) "the time and expense of litigation."  The district court did not directly address Leachco's likelihood of success on the merits, or any other elements of the preliminary injunction analysis.  Instead, the district court predicated its denial of relief on Leachco's failure to show irreparable harm.  Leachco now appeals this decision.[1]

## II. STANDARD OF REVIEW

We review the denial of a preliminary injunction for abuse of discretion.  Att'y Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d 769, 775 (10th Cir. 2009).  "A district court abuses its discretion when it commits an error of law or makes clearly erroneous factual findings."  Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1252 (10th Cir. 2006).  "[I]n the course of our review for abuse of discretion, we examine the district

---

[1] While Leachco's appeal was pending before this court, Leachco filed a number of motions with the district court and this court.  Leachco filed motions with the district court for an injunction against the CPSC proceedings and for a stay of the district court case pending appeal.  The district court denied the motion for an injunction aimed at the CPSC proceeding but granted the requested stay of its own proceeding.  Leachco then filed a motion with this court for an injunction against the CPSC proceedings pending appeal or, alternatively, for expedited consideration, which we denied.  Leachco then moved again for an injunction pending appeal with this court, which we also denied.  On July 31, 2023, Leachco filed an emergency motion for injunction pending appeal with this court.  We once again denied Leachco's motion.

court's legal determinations de novo, and its underlying factual findings for clear error." Tyson Foods, 565 F.3d at 776. "Our review of a district court's exercise of discretion is narrow, and we consider the merits of the case only as they affect that exercise of discretion." Id.

### III. DISCUSSION

"To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." Gen. Motors Corp., 500 F.3d at 1226. Here, the district court addressed only whether Leachco has established irreparable harm, so this is the sole issue we decide on appeal. "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Schrier, 427 F.3d at 1258.

Leachco argues the CPSC adjudication inflicts two distinct injuries upon it which support a finding of irreparable harm: "reputational and economic harm, as well as the constitutional injury of being subjected to an administrative proceeding carried out by an unconstitutionally structured agency." (Aplt. Br. 28-29).

Leachco did not assert the first alleged injury, reputational and economic harm, before the district court. See (Aplt. App. 92-94, 157-58) (Leachco's motion for preliminary injunction and reply in support of that motion argued that the CPSC adjudication caused harm in the form of subjecting it to a proceeding by an unconstitutionally structured agency and litigation expense—not reputational and

economic harm).[2]  Leachco has not explained to this court how its new appellate

argument that its purported reputational and economic harm constitute irreparable harm

survives the plain error standard of review.  Therefore, Leachco has waived this

argument.  Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1311 (10th Cir. 2011) ("[T]he

failure to argue for plain error and its application on appeal . . . surely marks the end of

the road for an argument for reversal not first presented to the district court."); United

States v. Regan, 627 F.3d 1348, 1354 (10th Cir. 2010) ("[W]e cannot hold that the district

court abused its discretion by failing to consider an argument that Regan did not raise.").[3]

**1. Even Assuming that Leachco has Established that the Removal Protections for CPSC Commissioners and ALJs are Unconstitutional, Leachco has Failed to Establish Entitlement to a Preliminary Injunction Because, Under Current**

---

[2] Leachco does not argue on appeal that litigation expense constitutes irreparable harm, which was probably a prudent decision.  See FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." (quoting Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974))).

[3] We reject Leachco's suggestion that it preserved the argument because of allegations of reputational and economic injury in its Verified Complaint.  Leachco cites Vette v. K-9 Unit Deputy Sanders for the proposition, "[a] Verified Complaint is considered to be the same as an affidavit or declaration given under oath." 989 F.3d 1154, 1163 (10th Cir. 2021) (internal quotations omitted).  While this court in Vette held that the district court did not abuse its discretion by considering the Verified Complaint as evidence on summary judgment, this holding has no bearing on the preservation issue here.  Id.  Even if Leachco's Verified Complaint is considered the same as an affidavit or declaration, the mere existence of allegations in the Verified Complaint did not preserve arguments Leachco might have made, but did not make, during argument before the district court on its motion for injunctive relief.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998) (explaining that the district court and this court "have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it").  To preserve its argument of reputational and economic harm, Leachco needed to present that argument to the district court in its motion for a preliminary injunction or briefing in support, and it failed to do so.

### Supreme Court and Tenth Circuit Precedent, Mere Subjection to Proceedings Before an Agency Whose Officials Possess Unconstitutional Removal Protections Does Not, by Itself, Establish Irreparable Harm

Therefore, Leachco's only preserved theory of irreparable harm is its alleged "constitutional injury of being subjected to an administrative proceeding carried out by an unconstitutionally structured agency." Leachco argues that the CPSC is unconstitutionally structured because "both the CPSC's Commissioners and ALJ Young," the presiding officer in the administrative proceeding against Leachco, "enjoy removal protections that violate the Separation of Powers, Article II's vesting of the executive power in the President, and the President's duty to 'take Care that the laws be faithfully executed.'" (Aplt. Br. 32) (citing U.S. Const. art. II, § 3).

Leachco has failed to show under prevailing law that its mere subjection to administrative proceedings before an agency whose officials possess unconstitutional removal protections, alone, constitutes irreparable harm. Instead, Tenth Circuit precedent establishes that, while violations of certain individual constitutional rights, without more, can constitute irreparable harm, violations of the Constitution's separation of powers provisions do not. And under current Supreme Court precedent, succeeding in a constitutional challenge to an agency official's removal protections is not sufficient, by itself, to warrant relief from proceedings before that agency official. Instead, the plaintiff must show that the unconstitutional removal protections made a difference in its case, and Leachco has failed to make that showing here.

9

a. **Under Current Tenth Circuit Precedent, Merely Being Subjected to an Agency Constructed in Violation of the Separation of Powers Does Not, by Itself, Constitute Irreparable Harm**

In Aposhian v. Barr, we surveyed our precedent to determine when a constitutional violation, alone, constitutes irreparable harm, and we distinguished between separation of powers violations (violations of the Constitution's allocation of power between the three branches, such as the violation being alleged here) and violations of individual constitutional rights (violations of the Constitution's protections of the individual in relation to the government, such as the rights guaranteed by the First and Fourteenth Amendments):

> [Aposhian] has not cited a single case where a generalized separation of powers [violation], by itself, constituted irreparable harm. To the contrary, our cases finding that a violation of a constitutional right alone constitutes irreparable harm are limited to cases involving individual rights, not the allocation of powers among the branches of government.

958 F.3d 969, 990 (10th Cir. 2020) (citing Free the Nipple-Fort Collins v. City of Fort Collins, 916 F.3d 792, 806 (10th Cir. 2019) (finding irreparable harm for alleged equal protection violation); Awad v. Ziriax, 670 F.3d 1111, 1119 (10th Cir. 2012) (same for alleged First Amendment violation); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2019) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary.") (emphasis added)). Based on this precedent, we rejected the argument that a violation of the Constitution's separation of powers, by itself, constituted irreparable harm. Aposhian, 958 F.3d at 990.

10

Leachco argues that we should not rely on our statement of law in Aposhian.

First, Leachco argues the above language was dicta because, in Aposhian, we did not

need to address whether the plaintiff established irreparable harm in order to affirm the

district court's denial of the preliminary injunction, since we had already concluded in

our opinion that the plaintiff failed to demonstrate a substantial likelihood of success on

the merits, and the government conceded before the district court—but not, apparently, in

the Tenth Circuit—that the plaintiff had established irreparable harm.  Id. at 989.

Additionally, Leachco argues the irreparable harm language in Aposhian was dicta

because we had concluded that the plaintiff had failed to raise a constitutional challenge

in his opening brief.  Id. at 989-90.

We reject these arguments.  First, while the government in Aposhian conceded at

the district court that the plaintiff would suffer irreparable harm without an injunction,

this concession was based only on a lost-property theory of harm—the government

expressly preserved its disagreement with the plaintiff's constitutional-violation-as-

irreparable-harm argument.  Id. at 989-90 (explaining that the government disagreed with

the plaintiff "about what the irreparable harm is," and the government "conceded [before

the district court] only that the irreparable harm was the loss of Mr. Aposhian's bump

stock"); Aplt. App. at 105-06 n.14, Aposhian, 958 F.3d 969 (government's response to

the plaintiff's motion for preliminary injunction).  So, when the plaintiff proceeded on

appeal with the same constitutional-violation-as-irreparable-harm theory to which the

government objected before the district court, the government repeated its objection, and

this court considered—and rejected—the plaintiff's argument. Aposhian, 958 F.3d at 989-90.[4] Thus, that remained a contested issue in Aposhian.

Second, a review of our opinion in Aposhian assures us that our conclusion that a separation of powers violation, alone, did not constitute irreparable harm was a holding, albeit one of two alternative holdings. Id. at 989 ("Although we could affirm the district court's denial of preliminary injunctive relief solely on the ground that Mr. Aposhian has failed to demonstrate a substantial likelihood of success on the merits, we also conclude that Mr. Aposhian has not met the other prerequisites for preliminary relief." (emphasis added)); id. at 990 (concluding both that Aposhian failed to present a constitutional challenge and that a separation of powers violation, alone, does not constitute irreparable harm, then stating, "[f]or these reasons, [Aposhian] has not met his burden of demonstrating that he would suffer irreparable harm absent an injunction." (emphasis added)). "Alternative rationales . . . , providing as they do further grounds for the Court's disposition, ordinarily cannot be written off as dicta." Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1243 (10th Cir. 2008). Consistent with this alternative holding and

---

[4] We note that this court is not bound to accept a party's concession on issues of law—especially when doing so would require accepting an erroneous statement or application of law. See Roberts v. Galen of Virginia, Inc., 525 U.S. 249, 253 (1999) ("[T]he concession of a point on appeal by respondent is by no means dispositive of a legal issue"); SEC v. Maxxon, Inc., 465 F.3d 1174, 1183 n.20 (10th Cir. 2006) (applying Roberts and concluding this court was not bound by a party's concession on appeal); United States v. McGregor, 650 F.3d 813, 824 n.4 (1st Cir. 2011) (applying Roberts and concluding the court was not bound on appeal by a party's concession made to the district court).

the further analysis provided in this opinion, we conclude that a mere generalized

separation of powers violation, by itself, does not establish irreparable harm.[5]

Leachco also attempts to rely on language from this court's decision in <u>Free the

Nipple</u>, where we said, "[w]hat makes an injury 'irreparable' is the inadequacy of, and

the difficulty of calculating, a monetary remedy after a full trial. . . . Any deprivation of

any constitutional right fits that bill."  916 F.3d at 806 (citation omitted).  However,

Leachco's reliance on <u>Free the Nipple</u> erroneously conflates "irreparable" with "harm."

In fact, all that <u>Free the Nipple</u> was saying was that the lack of a monetary remedy could

make an otherwise adequately alleged harm "irreparable"—not that it would itself

constitute the injury in the absence of a specifically alleged harm flowing from a

constitutional violation.  In other words, if Leachco fails to show that the alleged

constitutional violation has caused it, or will cause it, specific harm, then Leachco cannot

establish irreparable harm—even if it is unable to recover money damages.  Additionally,

in <u>Free the Nipple</u>, it was unnecessary to suggest that any deprivation of any

constitutional right constitutes irreparable harm, as that case involved only individual

rights, not the separation of powers.  <u>Id.</u> at 794-95, 806 (alleged injury was equal

protection violation based on ordinance that prohibited public toplessness by women, but

not men).  And the cases upon which we relied in <u>Free the Nipple</u> involved only

---

[5] Even if the language from <u>Aposhian</u> upon which we rely here was not an
alternative holding, it accurately synthesized our irreparable harm case law and
provided a clear statement of law under this court's precedent.  Therefore, even if
that language was not binding—which we believe it is—it is instructive, and we now
hold that a mere generalized separation of powers violation, by itself, does not
establish per se irreparable harm.

individual rights, not the separation of powers. Elrod v. Burns, 427 U.S. 347, 373 (1976) (involving First Amendment violation); Awad, 670 F.3d at 1119 (same). Therefore, we reject Leachco's reliance on this language from Free the Nipple. Instead, this court's statement of law in Aposhian, based on a survey of precedent which included Free the Nipple and cases decided before it, controls here. See Aposhian, 958 F.3d at 990; see also id. at 1000 n.6 (Carson, J., dissenting) (concluding government waived argument that plaintiff failed to establish irreparable harm, but stating, "[a]bsent waiver, I agree that Plaintiff cannot use our holding in Free the Nipple . . . that '[a]ny deprivation of any constitutional right' amounts to irreparable harm. . . Allowing any deprivation of any constitutional right to serve as per se irreparable harm is a far-too-powerful tool in most cases." (emphasis in original) (citation omitted)).

   **b.  Under the Remedial Analysis Required by the Supreme Court's Recent Decision in Collins v. Yellen, Leachco is Not Entitled to Relief, Even Assuming the Removal Protections are Unconstitutional, Unless it Can Show that the Removal Protections Affected the CPSC's Proceedings Against it, and Leachco has Failed to Make that Showing**

   Next, Leachco attempts to distinguish the language from Aposhian on the ground that Aposhian purported to address only "generalized separation-of-powers violation[s]," while Leachco asserts both a separation of powers violation and a resulting injury. Aposhian, 958 F.3d at 989. Specifically, Leachco argues it would be irreparably injured if the CPSC proceedings continue because sovereign immunity would preclude recovery of damages from the CPSC for any harm inflicted by the CPSC proceedings. See Chamber of Com. of U.S. v. Edmondson, 594 F.3d 742, 770-71 (10th Cir. 2010) (explaining that irreparable harm can be established when a plaintiff incurs damages

14

that cannot be recovered because of sovereign immunity). This argument seems to assume that, if Leachco ultimately succeeds on the merits of its constitutional challenges to the removal protections for CPSC commissioners and ALJs, it would necessarily mean that its interim subjection to the CPSC proceedings would have caused it compensable harm which it would be unable to recover because of sovereign immunity. However, Supreme Court precedent refutes the proposition that Leachco will suffer harm.

The Supreme Court's decision in Collins v. Yellen established that succeeding in a constitutional separation of powers challenge to a removal provision does not by itself entitle a party to retrospective relief. Instead, the challenger must establish that the unconstitutional provision actually caused him compensable harm—in other words, he must demonstrate that the unconstitutional removal provision actually affected the agency's decision or conduct against him. 141 S. Ct. 1761, 1788-89 (2021). In Collins, the Court concluded that the single-director structure of the Federal Housing Finance Agency (FHFA) was unconstitutional when the single director could only be removed for cause. Id. at 1787. For the remedy, however, the Court remanded, instructing the lower court to ascertain whether the plaintiffs were entitled to any retrospective relief. It noted that the agency's actions weren't void because the director had been validly appointed under the Appointments Clause.[6] Id. at 1787-88. Instead, the plaintiffs needed to show that the removal provision actually inflicted

---

[6] Like in Collins, Leachco does not challenge the authority of the CPSC commissioners or ALJ Young under the Appointments Clause, and we have no reason to believe that such a challenge would be successful.

harm on them.  Id. at 1788-89.  For example, the Court suggested that a removal provision might harm a plaintiff if the President had expressed that he wanted to remove the director but chose not to because of the limitations under the removal provision, thereby establishing that the unconstitutional removal provision actually affected the agency's conduct against the plaintiff.  Id. at 1789.[7]

Justice Thomas's concurrence in Collins further elaborates upon the majority's point in that case—that actions by an administrative official protected by an unconstitutional removal provision are not automatically unlawful and, therefore, do not necessarily inflict legal harm.  Id. at 1789 (Thomas, J., concurring).  Justice Thomas explained that "[t]he mere existence of an unconstitutional removal provision . . . generally does not automatically taint Government action by an official unlawfully insulated."  Id. at 1793 (Thomas, J., concurring).  Both Justice Thomas and the majority described why that is the case: "an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment)," and "[s]o regardless of whether the removal restriction was lawful or not, the President always had the legal power to remove the Director in a manner consistent with the

---

[7] As recently explained by the Fifth Circuit, "to demonstrate harm [under Collins], the Plaintiffs must show a connection between the President's frustrated desire to remove the actor and the agency action complained of."  Cmty. Fin. Servs. Ass'n of Am. v. CFPB, 51 F.4th 616, 632 (5th Cir. 2022) (emphasis in original), cert. granted, opinion rev'd on other grounds, CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd., 601 U.S. 416 (2024).

16

Constitution."  Id. at 1788-89 (majority opinion); id. at 1793 (Thomas, J., concurring).
Therefore, as explained by the majority in Collins, plaintiffs who succeed in a
constitutional challenge to a removal provision are not automatically entitled to relief—
they must show that the removal provision caused some harm to them beyond the
mere existence of the unconstitutional provision.[8]  Id. at 1788 n.23 (majority opinion)
(citing Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2207-11 (2020) for proposition that
"[s]ettled precedent . . . confirms that the unlawfulness of [a] removal provision does not
strip [the protected official] of the power to undertake the other responsibilities of his
office," and therefore a plaintiff must demonstrate that the unconstitutional provision
caused him harm to be entitled to relief); see also id. at 1795 (Thomas, J., concurring)
("I seriously doubt that the [plaintiffs] can demonstrate that any relevant action by an
FHFA Director," who was protected by an unconstitutional removal provision, "violated
the Constitution.  And, absent an unlawful act, the [plaintiffs] are not entitled to a
remedy.").

　　　Leachco argues that Collins only addressed the plaintiffs' entitlement to
retrospective relief, and therefore it is not applicable to Leachco's request for
prospective relief.  We disagree, and we instead agree with the Second, Fifth, and
Sixth Circuits that Collins' relief analysis applies to both retrospective and
prospective relief.  See Calcutt v. Fed. Deposit Ins. Corp., 37 F.4th 293, 316 (6th Cir.

---

[8] For example, that the President would have removed one or more
commissioners but for this statutory protection.  See supra 15-16 (discussing
Collins).

17

2022), cert. granted, opinion rev'd on other grounds, 598 U.S. 623 (2023) ("The Collins inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief (particularly when we review an adjudication that has already ended)."); Cmty. Fin. Servs. Ass'n of Am., 51 F.4th at 631 (5th Cir. 2022) (agreeing with the Sixth Circuit's statement in Calcutt and concluding Collins applies to claims for prospective relief); CFPB v. L. Offs. of Crystal Moroney, P.C., 63 F.4th 174, 180-81 (2d Cir. 2023) (applying Collins where the plaintiff, the CFPB, requested prospective relief—enforcement of a civil investigative demand).

To establish harm under Collins, Leachco would need to make a showing that the challenged removal provisions actually impacted, or will impact, the actions taken by the CPSC against it.  However, Leachco has failed to make any showing that, but for the allegedly unconstitutional removal provisions, the CPSC commissioners or ALJ Young would have been removed, the CPSC proceedings against it would not be occurring, or the proceedings would be different in any way. Therefore, Leachco has failed to establish that it would suffer future irreparable harm if the preliminary injunction is denied.[9]  And, as previously explained, a plaintiff

---

[9] It is for this same reason that we are not persuaded by the general cases cited by Leachco to argue that "issuing injunctions in separation-of-powers cases is standard operating procedure."  (Aplt. Br. 43).  While an injunction can be

must establish irreparable harm to receive a preliminary injunction.  <u>Urb. Gorilla</u>,

500 F.3d at 1226.  Leachco's failure on this prong is especially noteworthy given

that, under this court's precedent, it was required to show a "clear and unequivocal"

right to the requested preliminary injunction.  <u>Schrier</u>, 427 F.3d at 1258.  Leachco

failed completely to make such a showing.  Accordingly, the district court did not

abuse its discretion in denying injunctive relief.

### c. The Supreme Court's Jurisdictional Holding in <u>Axon Enterprise, Inc. v. FTC</u> Does Not Support Leachco's Irreparable Harm Arguments

Finally, in its emergency motion for injunction pending appeal, Leachco argues

that the language in the Supreme Court's recent decision in <u>Axon Enterprise, Inc. v.</u>

<u>FTC</u> "confirms that being subjected to an unconstitutional agency's proceeding,"

without more, constitutes irreparable harm.  (Aplt. Emergency Mot. 12) (citing <u>Axon</u>,

598 U.S. 175, 190-91 (2023)).  We reject this argument.

<u>Axon</u> does not help Leachco establish irreparable harm because <u>Axon</u> did not

address the issue of irreparable harm, or any other issue regarding entitlement to

injunctive relief.  The Court in <u>Axon</u> only addressed whether the petitioners, who

were respondents in administrative enforcement actions before the SEC and FTC,

could initially bring collateral challenges in federal district court to the

constitutionality of those agencies' structure.  <u>Axon</u>, 598 U.S. at 180.  To answer that

strictly jurisdictional question, the Court applied the jurisdictional factors from

---

appropriate relief for some separation of powers violations, the <u>Collins</u> relief analysis
applies when the alleged violation is an unconstitutional removal provision.

Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994) to determine whether the constitutional claims brought by the petitioners were of the type that Congress intended to allocate exclusively to the agency, or whether those claims could be initiated in federal district court: 1. "[C]ould precluding district court jurisdiction 'foreclose all meaningful judicial review' of the claim?"; 2. "[I]s the claim 'wholly collateral to [the] statute's review provisions'?"; and 3. "[I]s the claim 'outside the agency's expertise'?"  Axon, 598 U.S. at 186 (citing Thunder Basin, 510 U.S. at 208, 212).  The Court concluded that the answer to all three questions was "yes," and therefore the collateral constitutional claims could be heard by federal district courts. Id. at 195-96.  The Court did not, however, address issues of relief.

Leachco points to statements made by the Axon Court in the context of its Thunder Basin analysis to argue that subjection to proceedings before an unconstitutionally structured agency, alone, constitutes irreparable harm.  For example, the Court referred to subjection to proceedings before an unconstitutionally structured agency as a "here-and-now injury" that is "impossible to remedy once the proceeding is over."  Id. at 191; see also id. at 192 ("Axon and Cochran will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over.").  We do not believe these statements help Leachco establish irreparable harm here because they were made in the context of the Court's jurisdictional Thunder Basin analysis, and not within the context of determining the plaintiffs' entitlement to preliminary injunctive relief.  As described below, Supreme

Court precedent supports a narrow application of <u>Axon</u>'s "here-and-now injury"

language.

The Court's "here-and-now injury" language in <u>Axon</u> originated from <u>Seila</u>

<u>Law</u>, where the Court considered whether the petitioner, a California law firm, had

standing to challenge the CFPB's structure.  Amicus there argued "that the proper

context for assessing the constitutionality of an officer's removal restriction is a

contested removal," which was not the procedural posture of Seila's case, and

therefore the Court should dismiss the case without reaching the merits.  <u>Seila Law</u>,

140 S. Ct. at 2196.  The Court disagreed and decided it had jurisdiction to reach the

merits because when a removal provision "violates the separation of powers it inflicts

a 'here-and-now' injury on affected third parties that can be remedied by a court."

<u>Id.</u>  However, <u>Seila Law</u> concerned standing, <u>not</u> entitlement to injunctive relief.

That was the key distinction noted by the Supreme Court in <u>Collins</u> when it clarified

its "here-and-now injury" language from <u>Seila Law</u>:

> What we said about standing in <u>Seila Law</u> should not be misunderstood as a
> holding on a party's entitlement to relief based on an unconstitutional removal
> restriction. We held that a plaintiff that challenges a statutory restriction on the
> President's power to remove an executive officer can establish standing by
> showing that it was harmed by an [allegedly void] action that was taken by
> such an officer. . . . But that holding on standing does not mean that actions
> taken by such an officer are void *ab initio* and must be undone.

<u>Collins</u>, 141 S. Ct. at 1788 n.24.  We will follow the Supreme Court's words of

caution when interpreting the same "here-and-now injury" language from <u>Axon</u>—we

will not misunderstand what was said about jurisdiction in <u>Axon</u> "as a holding on a

party's entitlement to relief based on an unconstitutional removal provision."  <u>Id.</u>

21

Otherwise, the Supreme Court's limited jurisdictional holding in <u>Axon</u>, which only

upheld district court jurisdiction to consider collateral constitutional challenges to

administrative proceedings, would be converted into a broad ruling that creates an

entitlement on the merits to a preliminary injunction in every case where such

constitutional challenges are raised.  That cannot be the law under current Supreme

Court or Tenth Circuit precedent, as noted previously.  Therefore, as described

above, we follow the Court's relief framework from <u>Collins</u>.  Leachco's irreparable

harm arguments fail under this framework.

**2.  In the Context of Considering Whether Leachco Has Established Irreparable Harm (Necessary to Support its Claim for a Preliminary Injunction), We Next Consider its Only Preserved Theory of Harm, Which is its Claim that it was Required to Appear Before an Unconstitutionally Structured Agency**

Leachco further cannot satisfy the irreparable <u>harm</u> element for a preliminary

injunction because it has not shown that the CPSC is unconstitutionally structured,

which is the premise of its only preserved irreparable harm argument.  In other

words, without a constitutional violation, Leachco has no harm, let alone irreparable

harm.  Leachco cites a number of cases that it believes support its constitutional

challenges, and the government responds with cases it believes refute those

challenges.  As the parties have presented case law and arguments on the merits of

the constitutional issues because Leachco's irreparable harm argument is predicated

entirely on its ability to prevail on its constitutional arguments, we will address them

here.  <u>See</u> <u>Free the Nipple</u>, 916 F.3d at 806 ("[I]n the context of constitutional claims, the

['constitutional-violation-as-irreparable-injury'] principle collapses the first and second

preliminary-injunction factors, equating likelihood of success on the merits with a demonstration of irreparable injury."). Here, there is precedent from the Supreme Court, this court, and other federal courts casting doubt on Leachco's constitutional challenge to the CPSC.

###   a. Based on History and Precedent, the CPSC Commissioners' Removal Protections are Constitutional

"In separation-of-powers cases th[e Supreme] Court has often 'put significant weight upon historical practice.'" Zivotofsky ex rel. Zivotofsky v. Kerry, 576 U.S. 1, 23 (2015) (quoting NLRB v. Noel Canning, 573 U.S. 513, 524 (2014)).

This nation's history indicates that Congress and the President have both long valued a relatively independent agency as a means of addressing specialized disputes with specialized expertise and providing at least a temporal degree of some independence for the agency from short-term political pressures that may not always have been welcome, even by the President.[10] Independent agencies date back to at least 1887, when Congress created the Interstate Commerce Commission, a non-partisan, expert body tasked with monitoring railroads for compliance with federal law. Interstate Commerce Act of 1887, ch. 104, 24 Stat. 379. Congress created more

---

[10] See Seila Law, 140 S. Ct. at 2236-37 (Kagan, J., concurring in the judgment in part and dissenting in part) (explaining that the Court has generally left the issue of agency structure to the political branches, and those branches sometimes favor independent agencies because "[i]nsulation from political pressure helps ensure impartial adjudications. It places technical issues in the hands of those most capable of addressing them. It promotes continuity, and prevents short-term electoral interests from distorting policy."); Humphrey's Executor v. United States, 295 U.S. 602, 625-26 (1935) (analyzing the FTC Act and its creation of the FTC).

independent agencies in the early twentieth century, and the Supreme Court upheld the constitutionality of such agencies when challenged.  For example, in Humphrey's Executor v. United States, a unanimous Supreme Court upheld the structure of the Federal Trade Commission (FTC), an independent agency created by Congress in 1914 and tasked with policing unfair methods of competition, against a constitutional challenge similar to the argument advanced by Leachco in this case.  295 U.S. 602, 620 (1935).  Since the Supreme Court's decision in Humphrey's Executor, the constitutionality of independent agencies, whose officials possess some degree of removal protection that insulates them from unlimited and instantaneous political control, has been uncontroversial.  See, e.g., Morrison v. Olson, 487 U.S. 654, 724-25 (1988) (Scalia, J., dissenting) (stating that since Humphrey's Executor, "removal restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as . . . the Consumer Product Safety Commission").[11]

We just briefly consider Leachco's constitutional challenges to the CPSC's structure and the precedent it asserts to support those constitutional challenges, which

---

[11] In fact, the statutory removal protections with which Leachco takes issue here were accepted and signed into law by a President, the head of the Executive Branch.  They were not restrictions imposed upon an unwilling Executive Branch. Rather, the Executive Branch affirmatively chose to accept some insulation for its agencies and commissions from short term political control to ensure the good and faithful execution of its executive duties.  See Consumer Product Safety Act, Pub. L. No. 92-573, 86 Stat. 1207 (1972) (creating CPSC and removal protections for CPSC commissioners, signed into law by President Nixon); Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (creating removal protection for ALJs, signed into law by President Carter).  The removal protections at issue in this case originated with the exercise of, rather than limitations on, Presidential discretion.

are necessary predicates to its only preserved claim for preliminary injunctive relief in this interlocutory appeal—that it will be harmed by being forced even to appear before an unconstitutional agency.  Leachco argues the provision restricting the President's power to remove CPSC commissioners except "for neglect of duty or malfeasance in office but for no other cause" violates Article II and the Separation of Powers. (Aplt. Br. 15); 15 U.S.C. § 2053(a).  Precedential decisions by the Supreme Court and this court have addressed the constitutionality of similar removal protections.

In Humphrey's Executor, the Supreme Court upheld a provision restricting the President's power to remove FTC commissioners except for "inefficiency, neglect of duty, or malfeasance in office."  295 U.S. at 623, 629.  As explained recently by the Supreme Court in Seila Law, the Court's decision in Humphrey's Executor was based on both the structure of the FTC and the functions performed by the FTC: the FTC was "non-partisan," as there were five commissioners with no more than three from the same political party; the FTC was "neither political nor executive," but was instead a body of experts; the FTC commissioners' "staggered, seven-year terms enabled the agency to accumulate technical expertise and avoid a 'complete change' in leadership 'at any time'"; and the FTC did not wield "substantial executive power"—its functions were "quasi-legislative" (submitting reports to Congress) and "quasi-judicial" (serving as a master in equity for antitrust suits).  140 S. Ct. at 2198-2200 (citing Humphrey's Executor, 295 U.S. at 624, 628)).  Importantly, the

Supreme Court in <u>Seila Law</u> clearly stated that <u>Humphrey's Executor</u> remains binding today. <u>Seila Law</u>, 140 S. Ct. at 2206.

In a similar case, <u>SEC v. Blinder, Robinson & Co.</u>, this court upheld a restriction on the power of the President to remove SEC commissioners except for "inefficiency, neglect of duty or malfeasance in office." 855 F.2d 677, 682 (10th Cir. 1988). The SEC had five commissioners, no more than three could be from the same political party, and the commissioners served staggered, five-year terms. <u>Id.</u> at 681. In <u>Blinder, Robinson</u>, we relied on the Supreme Court's decisions in <u>Humphrey's Executor</u> and <u>Morrison v. Olson</u>. <u>Blinder, Robinson</u>, 855 F.2d at 681-82. In <u>Morrison</u>, the Court upheld a "good cause" removal protection for an independent counsel, even though "the functions performed by the independent counsel [were] 'executive' in the sense that they [were] law enforcement functions that typically have been undertaken by officials within the Executive Branch." 487 U.S. at 691-92. In doing so, the Court suggested that removal protections for officers in agencies with civil enforcement powers, including the CPSC, were constitutional. <u>See id.</u> at 691-92 n.31.

The CPSC is structured similarly to the FTC in <u>Humphrey's Executor</u> and the SEC in <u>Blinder, Robinson</u>: there are five CPSC commissioners, no more than three can be from the same party, and they serve staggered, seven-year terms. 15 U.S.C. § 2053(a), (b)(1), (c). And while the CPSC has investigatory powers, as well as civil and criminal enforcement powers, the Supreme Court's statements in <u>Morrison</u> suggest that the exercise of some arguably "executive" functions does not

26

undermine the constitutionality of tenure protections for officers of an expert, non-partisan agency.  See 15 U.S.C. § 2076(b)(7).

Next is Seila Law.  There, the Court held that a provision restricting the President's power to remove the director of the Consumer Financial Protection Bureau (CFPB) except for "inefficiency, neglect of duty, or malfeasance in office" was unconstitutional.  140 S. Ct. at 2193, 2201.  While part of the Court's reasoning focused on the executive nature of powers given to the CFPB director, the Court also emphasized that the CFPB's single-director structure was unique and perhaps suggested that the constitutional issue might be resolved if the CFPB was instead headed by multiple commissioners.  Id. at 2200, 2204 ("In addition to lacking the most direct method of presidential control—removal at will—the agency's unique structure also forecloses certain indirect methods of Presidential control. Because the CFPB is headed by a single Director with a five-year term, some Presidents may not have any opportunity to shape its leadership and thereby influence its activities." (emphasis added)); id. at 2211 (when discussing the possibility of severing the removal restriction from the rest of the CFPB's organic statute, "[o]ur severability analysis does not foreclose Congress from pursuing alternative responses to the problem—for example, converting the CFPB into a multimember agency.").  Significantly, as previously noted, the Court in Seila Law did "not revisit [its] prior decisions [upholding] certain limitations on the President's removal power," including Humphrey's Executor.  Id. at 2192.  Therefore, Humphrey's Executor remains good law.

27

Additionally, there is very current precedent from both the Court of Appeals for the Fifth Circuit and a federal district court supporting the position we are taking in this opinion.  The Fifth Circuit recently decided Consumers' Research v. CPSC, where the plaintiffs brought an Article II challenge to the CPSC commissioners' removal protections.  91 F.4th 342 (5th Cir. 2024).  The Fifth Circuit explained that, given the CPSC's structure—five members who serve staggered, seven-year terms, with no more than three from the same political party—it is a "mirror image of the Federal Trade Commission (FTC)," whose structure was upheld in Humphrey's Executor.  Id. at 346.  The Fifth Circuit then proceeded to analyze whether the Supreme Court's decision in Seila Law compelled the conclusion that the CPSC commissioners' removal protections are unconstitutional under that precedent.  The Fifth Circuit concluded, just as we have above, that the CPSC commissioners are distinguishable from the CFPB director, whose removal protections were struck down in Seila Law, because: 1. Unlike the CFPB, the CPSC's structure is well-grounded in historical precedent—it is structured similarly to many other independent, multimember agencies; 2. Unlike the CFPB, the CPSC is not headed by a single director—there are five CPSC commissioners; and 3. The CPSC commissioners' staggered terms mean that each President has an opportunity to influence the CPSC's leadership, and the President can also influence the CPSC through the budgetary process.  Id. at 354-55.  The Fifth Circuit ultimately held, exactly as we have above, that Humphrey's Executor remains binding precedent and controls in cases challenging removal protections for CPSC commissioners.  Id. at 352. ("The holding

28

from Humphrey's controls, the holding authorizes the [CPSC]'s structure, and the holding requires us to reverse the district court's judgment" that the CPSC's structure is unconstitutional).

Even more recently, the United States District Court for the District of Massachusetts adopted the Fifth Circuit's reasoning from Consumers' Research and rejected a constitutional challenge to the CPSC commissioner' removal protections. United States v. SunSetter Prods. LP, No. 23-cv-10744-ADB, 2024 WL 1116062 (D. Mass. Mar. 14, 2024). In SunSetter, the court explained that Humphrey's Executor remains binding and "continues to apply to any traditional independent agency headed by a multimember board, . . . like the CPSC." Id. at *4 (internal quotations and citations omitted).

Ultimately, the position asserted by Leachco would require us to revisit our own binding precedent as well as generate a split with the Fifth Circuit and depart from the general weight of authority, as described above. Given the clear precedential support for the CPSC commissioners' removal protections, we conclude that Leachco has failed to establish at this preliminary stage of the proceedings that such protections are unconstitutional and therefore Leachco has failed to demonstrate that such protections will cause it the narrow structural harm upon which it relies in this preliminary injunction appeal.

**b. The Removal Protections of CPSC ALJs are also Constitutional**

Leachco also challenges the removal protections for ALJ Young—the presiding officer in the CPSC proceedings against Leachco. (Aplt. Br. 21). As an

ALJ, Young may only be removed "for good cause established and determined by the Merit Systems Protection Board ['MSPB'] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). This means that for ALJ Young to be removed, the MSPB would have to find "good cause," and the CPSC commissioners would have to choose to act on this finding. MSPB members and CPSC commissioners are also protected by similar removal restrictions. 5 U.S.C. § 1202(d) (MSPB members can only be removed for "inefficiency, neglect of duty, or malfeasance in office"); 15 U.S.C. § 2053(a) (removal protection for CPSC commissioners). Leachco argues that this double-layered removal protection for ALJ Young—where he can only be removed for "good cause," and the MSPB members and CPSC commissioners responsible for his removal also have removal protections—is unconstitutional.

Generally speaking, it is constitutional for Congress to protect inferior officers with "good cause" removal restrictions. Morrison, 487 U.S. at 692-93; Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 495 (2010); see Lucia v. SEC, 585 U.S. 237, 244 n.3 (2018) (ALJs are "inferior officers"). However, in Free Enterprise Fund, the Supreme Court concluded, without overruling that general rule from Morrison, that Congress violated Article II when it gave inferior officers who exercised significant regulatory powers two layers of tenure protections. Free Enterprise Fund, 561 U.S. at 498. That case involved the Public Company Accounting Oversight Board ("PCAOB"), which had the power to regulate the public-company accounting industry, both through rulemaking and enforcement

actions.  Id. at 485.  Members of the PCAOB could only be removed by a vote of the

SEC, after notice and a hearing, and only if the SEC found that the member either

(1) willfully violated the Sarbanes-Oxley Act, Board rules, or other securities laws,

(2) willfully abused their authority, or (3) "without reasonable justification or excuse,

has failed to enforce compliance with" securities laws, Board rules, or professional

accounting standards.  Id. at 486.  And the SEC commissioners can only be removed

by the President for good cause.  Id. at 487.

The Court in Free Enterprise Fund explicitly stated that its holding, which

struck down double-layered tenure protections for PCAOB members, did not address

the constitutionality of similar tenure protections for inferior officers who perform

adjudicative functions, including ALJs.  Free Enterprise Fund, 561 U.S. at 507 n.10

("[O]ur holding also does not address that subset of independent agency employees who

serve as administrative law judges. . . [U]nlike members of the Board, many

administrative law judges of course perform adjudicative rather than enforcement or

policymaking functions, . . . or possess purely recommendatory powers." (citations

omitted)); Lucia, 585 U.S. at 244 n.1 (acknowledging that constitutionality of ALJs'

removal protections remains an open question).  This court similarly has not decided

whether Free Enterprise Fund's analysis applies to ALJs.

The Ninth Circuit addressed the constitutionality of double-layered "good cause"

removal protections for Department of Labor ALJs in Decker Coal Co. v. Pehringer.  8

F.4th 1123 (9th Cir. 2021).  The court concluded that Free Enterprise Fund's analysis

did not apply, and that the removal protections were constitutional, for four reasons:

1. The ALJ at issue was "performing a purely adjudicatory function," as opposed to the "policymaking and enforcement functions" performed by PCAOB members; 2. The statutory scheme at issue did not require the use of an ALJ in adjudications, so the President could order the Secretary of Labor to have the DOL adjudicate such claims using a different "qualified individual" who did not have the tenure protections; 3. The "good cause" standard for ALJ removal "suggests a lesser impingement on presidential authority" than the complex standard for PCAOB member removal in Free Enterprise Fund; and 4. ALJ decisions were subject to review by the Benefits Review Board (BRB), whose members could be removed by the Secretary of Labor at will.  Decker Coal, 8 F.4th at 1133-35.

We find the Ninth Circuit's analysis in Decker Coal persuasive here because ALJ Young performed "a purely adjudicatory function," Congress did not statutorily require that the CPSC use ALJs for administrative adjudications, and the "good cause" standard in the provision restricting—but not precluding—ALJs' removal is a "lesser impingement" than the standard at issue in Free Enterprise Fund.  See 5 U.S.C. § 556(b).  And while the Fifth Circuit found double-layered removal protections for ALJs unconstitutional in Jarkesy v. Securities and Exchange Commission, that court seemed to disregard the distinction between the PCAOB members in Free Enterprise Fund, who exercised executive functions, and ALJs, who perform adjudicatory functions.  34 F.4th 446, 465 (5th Cir. 2022), cert. granted, 143 S. Ct. 2688 (2023), and cert. denied, 143 S. Ct. 2690 (2023).  Supreme Court precedent establishes that this distinction matters.  See Free Enterprise Fund, 561

32

U.S. at 507 n.10; <u>Seila Law</u>, 140 S. Ct. at 2199 (recognizing <u>Humphrey's Executor</u>'s distinction between officers with "quasi-judicial" or "quasi-legislative" functions and "purely executive officers" (citation omitted)).

The foregoing analysis convinces us that Leachco has not, at this stage of the proceedings, established that it will suffer the irreparable harm that it relies on here if the preliminary injunction does not issue.  The precedential support for the constitutionality of the CPSC's structure necessarily helps inform our determination that Leachco has failed to establish irreparable harm, as required to obtain a preliminary injunction.

### IV. CONCLUSION

We conclude that the district court correctly decided that Leachco has failed sufficiently to demonstrate that it will suffer irreparable harm if not granted a preliminary injunction.  Under this court's precedent as described in <u>Aposhian</u>, the separation of powers violations alleged by Leachco, alone, are insufficient to establish irreparable harm for the purposes of supporting a preliminary injunction. <u>Aposhian</u>, 958 F.3d at 990.  Instead, under <u>Collins</u>, to be entitled to relief, Leachco needed to demonstrate how the allegedly unconstitutional removal protections for CPSC commissioners and ALJs actually affected, or will affect, the CPSC's actions against it. <u>Collins</u>, 141 S. Ct. at 1788-89.  The Supreme Court's jurisdictional analysis in <u>Axon</u> did not change the relief analysis required under <u>Collins</u>.  Leachco failed to demonstrate how the challenged removal provisions have made, or will make, any difference in the CPSC's actions against it.  Under <u>Collins</u>, this means Leachco has

failed to establish that the challenged provisions will cause it irreparable harm. Further, current Supreme Court and Tenth Circuit precedent, as well as recent case law from other federal courts, casts doubt on the merit of Leachco's constitutional challenges to the CPSC's structure, which are necessary predicates of its only preserved irreparable harm argument. Therefore, we AFFIRM the district court's denial of Leachco's motion for a preliminary injunction.